1 **WO**

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9 | Yvonne Lewis,                          )    No. Civ. 02-2322-PHX-MS
                                           )
10 |              Plaintiff,                )    **ORDER**
                                           )
11 | vs.                                    )
                                           )
12 |                                        )
    JoAnne Barnhart, Commissioner of the  )
13 | Social Security Administration,        )
                                           )
14 |              Defendant.                )
                                           )
15 | _____)

16

17        This social security disability benefits case comes before the Court on

18 Plaintiff's Motion for Summary Judgment[1] (Doc. 30) and Defendant's Cross-motion

19 for Summary Judgment (Doc. 33).  Oral argument was held on October 24, 2005,

20 and this matter was taken under advisement.  The Court now grants Plaintiff's

21 motion, denies Defendant's motion, and remands this matter for an award of

22 benefits.

23 **I. Procedural Background**

24

25

26        [1]      The full title of Plaintiff's motion is Motion for Summary Judgment on
27            Complaint for Judicial Review of Administrative Determination on
              Claims for a Period of Disability, Disability Insurance Benefits, and
28            Supplemental Security Income Benefits Based on Disability. [Doc. 30].

1     Plaintiff protectively filed applications for Disability Insurance Benefits and

2   Supplement Security Income payments on April 20, 1999.  [Doc. 25A at 154-56].

3   Her claims were denied initially and on reconsideration.  [Id. at 136-39, 142-45].

4   Plaintiff obtained a hearing before Administrative Law Judge ("ALJ") Joan Knight,

5   who issued an unfavorable decision on May 26, 2000.  [Id. at 399-415].  Plaintiff

6   sought review with the Appeals Council, which denied review on September 27,

7   2002.  [Id. at 396-97].  Plaintiff filed a Complaint in this Court on November 18, 2002.

8   [Doc. 1].  Pursuant to stipulation of the parties, the matter was remanded because

9   the transcript of the administrative hearing was lost.  [Docs. 21, 22].

10      While Plaintiff's application for review of ALJ Knight's May 2000 decision was

11   pending before the Appeals Council, Plaintiff filed second applications for Disability

12   Insurance Benefits and Supplemental Security Income payments.  [Doc. 25A at 443-

13   46].  ALJ Nancy Alden held a hearing on Plaintiff's second applications on February

14   20, 2003.  [Id. at 54-73].  ALJ Alden issued a favorable decision on February 27,

15   2003, awarding benefits based on an onset date of May 27, 2000.  [Id. at 40-48].

16   Although ALJ Alden's decision is not now at issue,[2] this Court directed in its remand

17   order on Plaintiff's initial claim that, "in light of allowance on the subsequent claim,

18   the ALJ will be instructed to consider the evidence in the subsequent claim to

19   determine whether there is new and material evidence relating to the prior claim and

20   to expedite his or her action on the Court remand."  [Doc. 22].

21      On remand, ALJ Knight again issued an unfavorable decision, finding that

22   Plaintiff was not disabled between January 1, 1998 and May 26, 2000.  [Doc. 25A

23   at 25-39].  On July 13, 2004, the Appeals Council denied review.  [Id. at 16-17].  ALJ

24

25

26      [2]    The decision presently being reviewed is ALJ Knight's decision of April
         29, 2004.  The April 29th decision pertains to the period of time between
27       January 1, 1998 (Plaintiff's alleged onset date), and May 26, 2000 (the
         day before ALJ Alden issued her favorable decision).  [Doc. 25A at 28].
28       ALJ Alden's decision pertains to the period commencing May 27, 2000.

1   Knight's April 29, 2004 decision thereby became the final decision of the

2   Commissioner of Social Security.  [Id.].

3          Plaintiff's case was reopened in this Court on January 13, 2005, and her

4   motion for summary judgment was filed on March 23, 2005.  [Docs. 23, 30].

5   Defendants' cross-motion was filed on April 25, 2005. [Doc. 33].  At issue is whether

6   ALJ Knight's April 29, 2004 decision should be affirmed or whether this matter

7   should instead be remanded.

8   **II. Legal Framework**

9          **A. Standard of Review**

10         Because the Social Security Act confines the scope of judicial review to

11   evidence within the administrative record, the Court will treat Plaintiff's Motion for

12   Summary Judgment as a motion for reversal of the Commissioner's decision.  42

13   U.S.C. § 405(g); Higgins v. Shalala, 876 F. Supp. 1224, 1226 (D. Utah

14   1994)(collecting cases and discussing the appropriate treatment of summary

15   judgment motions requesting review of administrative decisions).  The appropriate

16   standard of review is whether the ALJ's findings of fact are supported by substantial

17   evidence and whether the denial of benefits was free from legal error.  Smolen v.

18   Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Flaten v. Sec'y of Health & Human

19   Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).  Substantial evidence is "relevant

20   evidence as a reasonable mind might accept as adequate to support a conclusion."

21   Smolen, 80 F.3d at 1279 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971));

22   accord Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  To determine

23   whether substantial evidence exists to support an administrative decision, the Court

24   must "review the administrative record as a whole, weighing both the evidence that

25   supports and detracts from the [ALJ]'s conclusion."  Magallanes, 881 F.2d at 750.

26         If the evidence can support either affirming or reversing the ALJ's decision, the

27   Court must uphold the decision.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir.

28   1995).  However, reviewing courts cannot accept post hoc rationalizations for

1   agency action.  See, e.g., NLRB v. Metro. Life Ins. Co., 380 U.S. 438, 444 (1965);

2   Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).  Thus, the decision must be

3   upheld, if at all, on the grounds articulated in the order by the ALJ.  Pinto, 249 F.3d

4   at 847.

5              **B. Regulatory Disability Standards**

6              To qualify for disability benefits under the Social Security Act, a claimant must

7   show that: (1) she suffers from a medically determinable physical or mental

8   impairment that can be expected to result in death or that has lasted or can be

9   expected to last for a continuous period of not less than twelve months; and (2) the

10  impairment renders the claimant incapable of performing the work previously

11  performed and incapable of performing any other substantial gainful employment

12  that exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); Tackett

13  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Social Security Regulations set

14  forth a five-step sequential process for evaluating disability claims.  See 20 C.F.R.

15  § 404.1520.  A claimant's claim of disability can be rejected at any stage of the

16  sequential process.  Id.; § 404.1520.  The claimant bears the burden of proof at

17  steps one through four of the sequential process.  42 U.S.C. § 423(d)(5); Reddick

18  v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The burden shifts to the Commissioner

19  at step five.  Reddick, 157 F.3d at 721.

20             At step one of the sequential process, the ALJ determines whether the

21  claimant is currently engaged in substantial gainful activity.  Tackett, 180 F.3d at

22  1098; § 404.1520(b).  At step two, the ALJ determines, based on the medical

23  evidence, whether the claimant has a "severe impairment."  Id.; § 404.1520(c). If the

24  claimant's impairment is not severe, then the claimant will not be considered

25  disabled.   If the impairment is severe, the ALJ proceeds to step three and

26  determines whether the impairment meets or equals a specific impairment listed in

27  the regulations.  Id.; § 404.1520(d).  When the impairment "meets or equals" one of

28  the specified impairments, disability will be found.  When the impairment does not

1    meet or equal a specified impairment, the ALJ proceeds to step four and determines

2    whether the claimant can still perform "past relevant work." Id.; § 404.1520(e).  If the

3    claimant can perform such work, the claim is denied.  However, if the claimant is

4    unable to do past relevant work, the ALJ proceeds to the fifth step and determines,

5    based on the claimant's age, education, work experience and residual functional

6    capacity (RFC), whether the claimant can perform other work that exists in the

7    national economy.  Id.; § 404.1520(f).  If the claimant cannot, she is entitled to a

8    finding of disability.

9    **III.  Discussion**

10             **A. The ALJ's Findings**

11           The ALJ in this case found Plaintiff not disabled at step five of the sequential

12    evaluation process.  [Doc. 25A at 25-39].  At steps one through three, the ALJ

13    concluded that Plaintiff has not engaged in substantial gainful activity since her

14    alleged onset date, that Plaintiff's bilateral carpal tunnel syndrome with pronator

15    entrapment amounts to a severe impairment, and that  Plaintiff's condition was not

16    severe enough to meet or medically equal one of the impairments specified in the

17    regulations. [Id.].  At step four, the ALJ determined that Plaintiff's reported limitations

18    prevented her from performing her past relevant work.  [Id.].  At step five, however,

19    the ALJ determined that despite some limitations, Plaintiff retained the RFC to

20    perform a significant range of light work.  [Id.].  Specifically, the ALJ concluded that

21    Plaintiff could perform the functions of a flagger or an unarmed guard, two jobs

22    existing in significant numbers in the national economy.  [Id.].  Therefore, Plaintiff

23    was found not disabled.

24             **B.  Medical Testimony**

25

26

27

28

1      In conjunction with assessing Plaintiff's RFC, the ALJ discussed the reports

2 and opinions of various physicians, including Dr. Douglas A. Bobb,[3] Dr. Sebastian

3 B. Ruggeri,[4] and Dr. Malcolm McPhee.[5]   The ALJ additionally considered the

4 opinions of two medical experts, Dr. Sherry E. Sonka-Maarek and Dr. Vincent P.

5 Russo. Dr. Sonka-Maarek, a physical medicine and rehabilitation specialist, testified

6 at the remand hearing before ALJ Knight.   Dr. Russo testified at the hearing

7 previously held before ALJ Alden.   Ultimately, ALJ Knight adopted the opinions of

8 Dr. Sonka-Maarek. [Doc. 25A at 34-35].  Plaintiff now challenges the ALJ's decision.

9      The ALJ is responsible for evaluating the opinions of each doctor, resolving

10 conflicts in the medical testimony, and resolving ambiguities. Morgan v. Social Sec.

11 Admin., 169 F.3d 595, 601 (9th Cir. 1999); Reddick, 157 F.3d at 722; Andrews, 53

12 F.3d at 1039.   The degree of weight given to a particular physician's opinion

13 depends on a variety of factors.  Among the relevant factors to be considered are the

14 relationship between the physician and patient, the length and extent of treatment,

15 the physician's specialty, and the support for the physician's opinion in the medical

16 record.  20 C.F.R. § 404.1527(d); see also Andrews v. Shalala, 53 F.3d at 1035,

17

18

19

20        [3]   Dr. Bobb examined Plaintiff in 1999, diagnosed Plaintiff with median nerve entrapment in both forearms, and recommended surgical intervention.  [See Doc. 25A at 32].

21

22        [4]   Dr. Ruggeri, an arm, shoulder and hand surgeon, treated Plaintiff in April, 2001.  He diagnosed Plaintiff with carpal tunnel syndrome and recommended treatment with medication, vitamin B-6 and exercise.  In July of 2001, Dr. Ruggeri recommended further conservative treatment, including the use of a short arm cock-up splint for Plaintiff's right wrist. [See Doc. 25A at 33].

23

24

25

26        [5]   In November of 2001, Plaintiff was examined by Dr. McPhee at the request of a state agency.  Dr. McPhee, who specialized in physical medicine and rehabilitation, diagnosed Plaintiff with status post bilateral carpal tunnel release and mid-back aches.  [See Doc. 25A at 33-34].

27

28

1   1041 (9th Cir. 1995)(discussing the weight to be given to different types of physicians'

2   opinions).

3          Both Dr. Sonka-Maarek and Dr. Russo were non-examining medical experts.

4   Neither physician had a treatment relationship with Plaintiff.  Evidence from non-

5   examining sources is considered opinion evidence.  20 C.F.R. § 404.1527(f). The

6   weight given to opinions from non-examining sources depends "on the degree to

7   which they provide supporting evidence for their opinions."   20 C.F.R. §

8   404.1527(d)(3).

9          Here, the ALJ recognized that Plaintiff had "medically determinable

10  impairments during the time period at issue which may be expected to have resulted

11  in some pain and functional limitations."   [Doc. 25A at 32].  Nonetheless, the ALJ

12  rejected Plaintiff's disability claim, in part, on grounds that the medical evidence of

13  record did not substantiate the severity of Plaintiff's pain.  [Id.]  In support of this

14  determination, the ALJ relied on Dr. Sonka-Maarek's statement that the medical

15  records she reviewed did not contain a clear description of the severity of pain

16  suffered by Plaintiff.  [Id. at 35].  The ALJ further rejected Dr. Russo's opinion that

17  Plaintiff would have moderate to moderately severe pain during the time period at

18  issue based on her symptoms, stating that Dr. Sonka-Maarek's opinion was more

19  specific and would be adopted.

20         Plaintiff now contends that the ALJ erred by using Dr. Sonka-Maarek's

21  testimony as a basis for finding Plaintiff's pain less severe than alleged because Dr.

22  Sonka-Maarek did not consider the severity of Plaintiff's pain when assessing

23  Plaintiff's limitations during the relevant time period.   [Doc. 31 at 3-5].   In

24  comparison, Dr. Russo testified that Plaintiff's moderate to moderately severe pain

25  would relate back to 1998.  [Id.].  Plaintiff asserts that Dr. Russo's opinion was

26  improperly rejected, and Dr. Sonka-Maarek's opinion improperly adopted.  [Id.].

27  Additionally, Plaintiff maintains that because she submitted objective evidence of an

28

1    underlying medical impairment, the ALJ could not properly reject her claim on

2    grounds that the severity of her symptoms was not objectively verifiable. [Id.].

3         The Court agrees with Plaintiff that the ALJ placed undue reliance on Dr.

4    Sonka-Maarek's opinion.  Although Dr. Sonka-Maarek testified that the medical

5    records under review did not reveal documentation of the severity of Plaintiff's pain,

6    the doctor did not affirmatively rule out the possibility that Plaintiff in fact suffered

7    severe pain as a result of her carpal tunnel syndrome. [See Doc. 25A at 106-07].

8    Indeed, Dr. Sonka-Maarek recognized that Plaintiff's medically determinable

9    impairment could reasonably be expected to lead to some degree of pain, even

10   though the degree of pain was not clearly documented. [Id. at 111]. Therefore, Dr.

11   Sonka-Maarek's opinion did not necessarily conflict with Dr. Russo's assessment of

12   moderate to moderately severe pain, and the ALJ's purported reason for rejecting

13   Dr. Russo's testimony was insufficient.

14        The Court further finds that the ALJ erroneously discredited Plaintiff's

15   complaints of pain on grounds that the severity of her pain was not substantiated by

16   her medical records.  "Once a claimant produces medical evidence of an underlying

17   impairment which is reasonably likely to be the cause of some pain, the ALJ may not

18   discredit a claimant's testimony of pain and deny disability benefits solely because

19   the degree of pain alleged by the claimant is not supported by objective medical

20   evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995)(quoting Bunnell,

21   947 F.2d at 346-47); accord  Reddick, 157 F.3d at 722.  As the ALJ properly

22   conceded, the medical evidence of record clearly indicates that Plaintiff suffered

23   from carpal tunnel syndrome. [See Doc. 25A at 32-35]. Thus, accepting Dr. Sonka-

24   Maarek's observation that the severity of Plaintiff's pain was undocumented does not

25   mandate a conclusion that Plaintiff was not disabled. Rather, proof of the existence

26   of an underlying impairment necessitates further inquiry into the persistence and

27   intensity of Plaintiff's symptoms, including consideration of Plaintiff's subjective

28   complaints of pain. See 20 C.F.R. § 404.1529(c); Reddick, 157 F.3d at 722.  For

1  these reasons, the ALJ's reliance on Dr. Sonka-Maarek's opinion alone in

2  determining Plaintiff's RFC was improper.

3         Unless there is affirmative evidence that she was malingering, the ALJ has the

4  burden of presenting clear and convincing reasons for rejecting the Plaintiff's

5  testimony regarding the severity of her symptoms.  Rollins v. Massanari, 261 F.3d

6  853, 857 (9th Cir. 2001).  Analysis of the ALJ's credibility findings is therefore critical

7  to   the   determination   of   whether   the   ALJ's   decision   is   sustainable.

8         **C. Plaintiff's Credibility**

9         The ALJ found that, although Plaintiff had medically determinable impairments

10 and limitations, Plaintiff's subjective reports of pain were not fully credible.  [Doc. 25A

11 at 38].  Plaintiff challenges the ALJ's credibility determination on grounds that the

12 ALJ failed to identify specific parts of Plaintiff's testimony that were not credible and

13 cited reasons for rejecting Plaintiff's testimony that fall short of satisfying the clear

14 and convincing evidence standard.  [Doc. 31 at 5-8].

15        It is within the province of the ALJ to make credibility determinations.  An ALJ

16 may discredit a claimant's testimony by providing specific, cogent reasons supported

17 by substantial evidence.  Andrews, 50 F.3d at 749-50; Reddick, 157 F.3d at 722.  In

18 determining whether allegations of pain support a claim of disability, the ALJ may

19 consider various factors, including: the claimant's daily activities, effectiveness of

20 pain medication, and relevant character evidence."  Bunnell, 947 F.2d at 346; see

21 also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(listing similar factors considered by

22 the ALJ in assessing a claimant's credibility).  In addition, the ALJ must consider the

23 claimant's work record, observations of treating or examining physicians and other

24 third parties, precipitating and aggravating factors, and functional restrictions caused

25 by the symptoms.  Smolen, 80 F.3d at 1284 (citing SSR 88-13); Bunnell, 947 F.2d

26 at 346.

27        As noted previously, the ALJ could not discredit the claimant's testimony about

28 the severity of her symptoms solely on grounds that her complaints are unsupported

1   by the objective medical evidence.  Reddick, 157 F.3d at 722.   However, Plaintiff's

2   description of her own pain and other symptoms "shall not alone be conclusive

3   evidence of disability."  42 U.S.C. § 423(d)(5)(A); Fair, 885 F.2d at 603-04.  The key

4   issue instead is whether the pain precludes the claimant from engaging in

5   substantial gainful employment.  Id.  Because Plaintiff produced some evidence that

6   she had an underlying impairment that could reasonably be expected to produce the

7   type of complaints she allegedly suffered, and because there is no evidence of

8   malingering, the ALJ could only reject Plaintiff's pain testimony for clear and

9   convincing reasons.  Regennitter, 166 F.3d 1294, 1296 (9th Cir. 1999); Lester v.

10  Chater, 81 F.3d 821, 834 (9th Cir. 1996).

11         The  ALJ provided several reasons for rejecting Plaintiff's testimony.  The ALJ

12  observed that Plaintiff was a low-income earner who had a baby in 1998.  In the

13  ALJ's view, Plaintiff's income and parenting status "at least raise[d] the question

14  whether the claimant's unemployment was due to her alleged impairments."  [Doc.

15  25A at 36].  The ALJ additionally noted that Plaintiff was not treated for chronic pain

16  syndrome or severe pain syndrome, that Plaintiff's medical records did not contain

17  clear descriptions of her pain during the relevant time period even though she sought

18  medical treatment for unrelated conditions, that conservative treatment was

19  recommended to Plaintiff, and that Plaintiff managed her pain without medication.

20  [Doc. 25A at 33, 35].  Finally, the ALJ opined that Plaintiff's reports to her doctors

21  differed from her reports to the Social Security Administration.

22         The Court finds that the ALJ's determinations are unsupported by clear and

23  convincing reasons or substantial evidence.   First, the ALJ's conclusion that

24  Plaintiff's unemployment might be attributed to the birth of her child and her low

25  earnings history rather than from her disability rests on pure speculation.  There is

26  no evidence in the record that Plaintiff was malingering or that she chose not to work

27  because of her personal situation.  To the contrary, the record evidences the fact

28  that Plaintiff had a history of carpal tunnel syndrome for at least two years prior to

1 the date she claimed disability. The ALJ's unsupported speculation is not a clear

2 and convincing reason, and is not supported by substantial evidence. See

3 Regennitter, 166 F.3d at 1298 (rejecting an ALJ opinion that rested on speculation);

4 SSR 96-7p, 1996 WL 374186 *4 ("The finding on the credibility of the individual's

5 statements cannot be based on an intangible or intuitive notion about an individual's

6 credibility).[6]

7        Second, as explained fully above, the ALJ's finding that Plaintiff likely did not

8 suffer the degree of pain alleged because Plaintiff's treatment records did not verify

9 the severity her complaints, is not itself a valid basis for rejecting her testimony.

10 Reddick, 157 F.3d at 722; SSR 96-7p. The fact that Plaintiff was not treated for

11 chronic pain syndrome also does not establish that she did not suffer pain. Similarly,

12 the fact that Plaintiff did not report pain associated with her carpal tunnel syndrome

13 to doctors who were treating her for unrelated conditions does not negate her claim

14 that she also suffered pain in association with her carpal tunnel syndrome. See,

15 e.g., Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (finding that absence

16 of notation of mental problems in treatment records related to claimant's physical

17 ailments was not probative of Plaintiff's mental condition because the doctors

18 treating the claimant's physical ailments "had no duty to inquire about, consider, or

19 document anything other than the injury for which plaintiff sought treatment").

20 Furthermore, Plaintiff provided a legitimate reason to explain any lack of treatment

21 history– she was uninsured. The ALJ erred by cursorily disregarding this

22 explanation. See Smolen, 80 F.3d at 1284 (finding that Plaintiff's failure to take

23 medication was not a clear and convincing reason for discrediting Plaintiff's

24 testimony where Plaintiff testified that she had no insurance).

25

26     [6] Even the ALJ's discussion fell short of stating that the evidence was
27 sufficient to reject Plaintiff's testimony. The ALJ merely stated that
Plaintiff's status "at least raised the question" whether Plaintiff's
28 disability was the reason for her unemployment.

1       The ALJ additionally relied on the fact that "conservative treatment" was

2   recommended to Plaintiff and observed that Plaintiff "managed her pain for

3   significant periods of time without medication." [Doc. 25A at 33, 35]. However,

4   conservative treatment was recommended after Plaintiff had undergone surgery that

5   failed to provide long-term relief of her symptoms, and after she was informed that

6   future surgery would have less likelihood of success than her initial surgery. [Id. at

7   239]. Thus, the recommendation of conservative treatment is not at odds with

8   Plaintiff's claim that she suffered ongoing pain as a result of her carpal tunnel

9   syndrome.

10       Moreover, Plaintiff was prescribed medication for her pain on more than one

11   occasion. [Id. at 218, 225, 534, 541]. Additionally, she stated that she took over-

12   the-counter medicine. Although Plaintiff was not extensively questioned by ALJ

13   Knight on remand, she explained in the hearing before ALJ Alden that she took over-

14   the counter pain relievers because she was "not really . . . big on medicine." [Doc.

15   25A at 59]. Nonetheless, she testified that she continued to suffer "really bad pain."

16   Id. Further, as noted above, gaps in Plaintiff's treatment history can be explained

17   by her lack of insurance. Thus, the record does not support a conclusion that

18   Plaintiff effectively managed her pain for significant periods of time without

19   medication.

20       Third, the record does not clearly support all the alleged inconsistencies

21   between Plaintiff's reports to the Social Security Administration and the reports made

22   to her doctors cited by the ALJ. For example, the ALJ opined that although Plaintiff

23   claimed she frequently dropped items, she did not report this to her doctors. Yet,

24   Plaintiff did specifically report dropping things in 1996, and later reported that her

25   previous symptoms were recurring. [Doc. 25A at 225, 516]. She also consistently

26   complained to her doctors that she had pain, swelling, numbness and weakness.

27   [Doc. 25A at 234, 239, 276, 516]. In her testimony before ALJ Alden, she explained

28   that she often dropped items because she could not feel them in her hand. [Doc.

1  25A at 63].  This statement is consistent with the symptoms she reported to her

2  doctors.

3        The Court also questions the ALJ's finding that Plaintiff's disability claim was

4  inconsistent with her medical records on grounds that Plaintiff reported to her

5  doctors in February 1999 that she had only been symptomatic for the three previous

6  months, but alleged a disability onset date of January, 1998 to the Social Security

7  Administration.  The treatment note upon which the ALJ relied for this conclusion

8  reads as follows: "Had surgery on [both] hands for carpal tunnel and they are giving

9  me problems now.  X 3 mos. they get bumps on the arms and swell and hurt really

10 bad..." [Doc. 25A at 516].  A fair interpretation of this note is that Plaintiff had been

11 experiencing bumps and swelling in her arms for three months, not that she had only

12 been experiencing symptoms for three months.  Even construing any ambiguity in

13 favor of the ALJ's interpretation, however, the Court does not find the ALJ's

14 reasoning to be clear and convincing, especially in light of Plaintiff's medical history

15 before and after her alleged onset date.  She reported the symptoms of carpal tunnel

16 syndrome on several occasions between 1996 and 2001.  At most, the February

17 note raised a question about Plaintiff's treatment between January 1998 and

18 February 1999 that could have been, but was not, explored further by the ALJ.

19       The ALJ also found it significant that "the record in this case reveals no

20 restrictions recommended by a treating physician."  Id. at 36.  It is not clear,

21 however, whether Plaintiff's treating physicians were ever asked to evaluate whether

22 Plaintiff should be restricted from work.  Further, even Dr. Sonka-Maarek, whose

23 opinion the ALJ adopted, determined that Plaintiff's restrictions dated from the

24 alleged onset date.  Although Dr. Sonka-Maarek's opinion was limited as explained

25 above, the record  reflects that Plaintiff's complaints extended as far back as 1996.

26 Dr. Russo also testified that Plaintiff's symptoms would relate back to her onset date.

27 There is no evidence indicating that a date different than the alleged onset date

28 should be used, and no evidence of malingering. For these reasons, the lack of

1  unsolicited restrictions by Plaintiff's physicians does not a provide clear and

2  convincing reason for rejecting Plaintiff's testimony or provide substantial evidence

3  relating to the ALJ's residual functional capacity assessment.  See, e.g., Hutsell v.

4  Massanari, 259 F.3d 707, 712 (8th Cir. 2001).

5  The final "inconsistency" found by the ALJ, that Plaintiff alleged to the

6  Administration that she suffered from back pain but her medical records do not

7  reflect treatment for back pain, finds some support in the record.  The Court

8  observes, however, that Plaintiff did not report back pain until she filed supplemental

9  disability paperwork in 2001.[7]  [Doc. 25A at 453-475].  She also informed Dr.

10  McPhee, a state agency physician, that she was suffering back pain in 2001. [Id. at

11  33, 551].  She did not allege back pain during the period of time now in question.

12  Therefore, Plaintiff's medical records for the period between January 1, 1998 and

13  May 26, 2000 are not inconsistent with her disability claims for the contemporaneous

14  time period.  The Court is unconvinced that Plaintiff's statement regarding back pain

15  on disability paperwork in 2001 provides a clear and convincing reason for rejecting

16  her testimony in its entirety.

17  The Court additionally agrees with Plaintiff that the ALJ failed to point to

18  specific portions of Plaintiff's testimony that were not credible.  Instead, the ALJ

19  merely listed the aforementioned general reasons for rejecting Plaintiff's claims and

20  speculated about the truth of her assertions.  An ALJ's credibility findings must be

21  sufficiently specific to allow a reviewing court to conclude that the hearing officer

22  rejected the testimony on permissible grounds rather than arbitrarily discrediting it.

23  Rollins, 261 F.3d at 856. The ALJ may not reject a claimant's testimony without

24  specifically identifying the portions of the testimony found not credible and explaining

25  what evidence contradicts or undermines the testimony. Aukland v. Massanari, 257

26

27          [7]        The Court further observes that it does not appear that the ALJ
                questioned Plaintiff about this issue, or attempted to obtain records
28              related to her back pain.

1   F.3d 1033, 1036 n.1 (9th Cir. 2001); Rollins, 261 F.3d at 856; Reddick, 157 F.3d at

2   722.  Here, the ALJ failed in her obligation to identify the problematic testimony and

3   point to contradictory evidence.

4          For the foregoing reasons, the ALJ erred in failing to adequately consider the

5   Plaintiff's subjective complaints of pain.

6          **D. Remand**

7          Having found error, this Court must determine whether to remand for further

8   consideration or for the award of benefits.  McCartey v. Massanari, 298 F.3d 1072,

9   1076-77 (9th Cir. 2002); Smolen, 80 F.3d at 1292.  An award should be directed on

10  remand when: (1)  the ALJ failed to provide legally sufficient reasons for rejecting

11  evidence, (2) there are no outstanding issues that must be resolved, and (3) it is

12  clear from the record that the ALJ would be required to find the claimant disabled

13  were the rejected evidence credited.  Smolen, 80 F.3d at 1292; see also Benecke

14  v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).   However, remand for further

15  consideration is appropriate where issues are unresolved and enhancement of the

16  record is required.  Id.

17         Plaintiff argues that this case should be remanded for an award of benefits

18  rather than to allow further proceedings.  [Doc. 38 at 7].  The Court agrees.  All the

19  requirements of Smolen have been met.  First,  as explained previously, the ALJ did

20  not provide legally sufficient reasons for rejecting evidence of Plaintiff's pain.

21  Moreover, there are no outstanding issues that must be resolved on remand.

22  Pursuant to this Court's prior remand order, the evidence presented to ALJ Alden

23  was properly before ALJ Knight on remand.  [Doc. 22].  At the hearing before ALJ

24  Alden, the vocational expert testified that a person with Plaintiff's limitations, as

25  established by the testimony of Plaintiff and Dr. Russo, would not be able to sustain

26  work.  Thus, further inquiry into whether Plaintiff would be found disabled if the

27

28

1   improperly discredited evidence were credited is not required.[8]   It is clear that

2   Plaintiff would be entitled to a finding of disability.   For these reasons, the Court

3   finds that an award of benefits is warranted.  Benecke, 379 F.3d at 593; Smolen, 80

4   F.3d at 1292.

5       **IT IS THEREFORE ORDERED granting** Plaintiff's Motion for Summary

6   Judgment (Doc. 30);

7       **IT IS FURTHER ORDERED denying** Defendant's Cross-Motion for Summary

8   Judgment (Doc. 33);

9       **IT IS FURTHER ORDERED remanding** this matter to the Social Security

10  Administration, and directing the Administration to provide Plaintiff with disability

11  benefits for the period of time between January 1, 1998 and May 26, 2000.

12

13      DATED this 27th day of October, 2005.

14  _____
                     Morton Sitver
15                United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27      [8]      Additionally, Defendant conceded at oral argument that an award of
                benefits would be proper were the Court to find that ALJ's reasons
28              were not clear and convincing and to credit Plaintiff's testimony.

- 16 -